IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 19, 2003

## STATE OF TENNESSEE v. MONA RAY CLOUD ALIAS MONA R. HEADRICK, ALIAS MONA R. CLOUD, ALIAS MONA HEADRICK

**Appeal from the Circuit Court for Blount County**
**Nos. C-13169, C-13170, C-13959     D. Kelly Thomas, Jr., Judge**

---

**No. E2002-03002-CCA-R3-CD**
**October 20, 2003**

---

The defendant, Mona Ray Cloud, pled guilty in the Blount County Circuit Court to aggravated burglary, a Class C felony; violating the Motor Vehicle Habitual Offender (MVHO) Act, a Class E felony; and criminal impersonation, a Class A misdemeanor. Pursuant to the plea agreement, she received four-year, one-year, and six-month sentences, respectively, with the one-year and six-month sentences to be served concurrently to each other but consecutively to the four-year sentence for an effective sentence of five years in the Department of Correction (DOC). The manner of service was to be determined by the trial court. After a sentencing hearing, the trial court ordered the defendant to serve her sentences in confinement. The defendant appeals, claiming that she should have received alternative sentences. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Steve McEwen, Mountain City, Tennessee (on appeal); Raymond Mack Garner, District Public Defender; and Stacey D. Nordquist, Assistant District Public Defender (at trial), for the appellant, Mona Ray Cloud, alias Mona R. Headrick, alias Mona R. Cloud, alias Mona Headrick.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Michael L. Flynn, District Attorney General; and James T. Brooks, III, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the defendant's being stopped for speeding in August 2000 and being caught burglarizing a home in November 2000. Although the state did not give a factual account of the crimes at the guilty plea hearing, the record reveals that on August 4, 2000, the defendant was

stopped for speeding and gave the police officer her sister's name. When the defendant finally told the officer her real name, a computer check revealed that she had been declared a habitual offender pursuant to the MVHO Act. On November 11, 2000, the defendant was caught in her car a short distance away from a home with an item that had been taken from the home.

At the sentencing hearing, Milburn Waters testified that his parents used to live at 2311 Duncan Road. He said that although his parents no longer lived there, the home was full of furnishings and family items. He said that on November 11, 2000, his daughter discovered that items were missing from the house. He said he went to the scene and discovered that the house had "just been ravaged really, just ripped off -- most of the articles gone." He said he left the house and returned sometime later that day. He said he parked on Duncan Road, walked toward the house, and saw a car with its headlights turned on driving away from the house and toward him. He said that the car almost hit him, that the defendant was driving, and that he did not know her. He said that his mother's cedar chest was in the defendant's car and that the defendant jumped out of the car and ran away. He said that he telephoned 9-1-1 and that the police used dogs to search for the defendant. He said the police found her in a field and arrested her.

On cross-examination, Mr. Waters testified that when he first went to the house on November 11, he saw that the back door glass had been broken and that the door's lock had been removed. He said that the house was in disarray and that furniture, jewelry, and cookware were missing. He said that when he returned to the house, he caught the defendant "red-handed" with the cedar chest. He said that the chest was the only item in her car and that the chest was returned to him. He said that the police also recovered some other stolen property from pawn shops in Knoxville but that he got very few of the missing items back.

Pamela Waters Speed, Milburn Waters' daughter, read her written statement to the trial court. In the statement, she said that her family had suffered pain and anguish over the defendant's actions and that she was hurt and angry. She said the defendant did not work for a living, had stolen from other people, and should have to serve her sentences in prison.

The then forty-seven-year-old defendant testified that in August 2000, she had been visiting a friend in Maryville and was returning home when the police stopped her for speeding. She said that she gave the police officer her sister's name because she had been declared a habitual offender pursuant to the MVHO Act, did not have a driver's license, and did not want to go to jail. She said that she told the police officer her real name and that she had not had a driver's license since 1995. Regarding her aggravated burglary conviction, she testified that she saw Ruby Linginfelter, whom she had known for many years, in Rockford, Tennessee. She said that she told Ms. Linginfelter she was trying to furnish her apartment, that Ms. Linginfelter claimed to have access to plenty of curtains and dishes, and that she bought a set of dishes and a quilt from Ms. Linginfelter. She said that one day, Ms. Linginfelter asked the defendant to drive Ms. Linginfelter to an antique dealer in Knoxville. She said that she met Ms. Linginfelter at the Waters' house on Duncan Road and that Ms. Linginfelter carried items out of the house and put them into the defendant's car. She said Ms. Linginfelter claimed that a woman who used to live in the home had died and that the woman's son

did not care about its contents. She said that Ms. Linginfelter claimed to have been taking things out of the house for over a year and that she realized Ms. Linginfelter was stealing items from the home. She said that she also took property from the house and that she knew the property was stolen.

The defendant testified that in November 2000, Ms. Linginfelter offered to sell her a cedar chest for fifty dollars. She said she paid for the chest and went to the house on Duncan Road to pick it up. She said that as she was leaving, she saw Milburn Waters. She said that Mr. Waters' car was blocking the driveway and that she tried to drive around it. She said that Mr. Waters walked up to her car, opened her door, and tried to pull her out. She said that she ran away and that she did not try to hit him with her car. She said that Mr. Waters got his mother's cedar chest back and that she gave the set of dishes she had bought from Ms. Linginfelter to the police. She said that Ms. Linginfelter had pawned many of the house's contents and that she did not know what happened to the jewelry and paintings that Ms. Linginfelter had taken from the home.

The defendant testified that she has a drug problem and that her drug screen for her presentence report tested positive for cocaine, marijuana, and morphine. She said that in 1992 or 1993, she was in a treatment program for alcohol abuse but that she relapsed almost immediately after her release. She said that she still could not pass a drug screen; that she was ready to participate in a drug treatment program; and that she could be an asset to the community, herself, and her family. Upon being questioned by the trial court, the defendant testified that she took items from the Waters' house four or five times. She acknowledged having two prior burglary convictions. She said that after committing one of the burglaries in 1985, she fled Tennessee and was not convicted for the crime until 1992. She said that when she fled Tennessee, she spent time in Florida and Alabama, owned her own businesses there, and was arrested for driving under the influence (DUI) once in Alabama. She said that when she returned to Tennessee, she was convicted of burglary and bail jumping. She said that she received one-year sentences for each conviction and was to serve her sentences in a community corrections program. She said that her community corrections sentences were revoked in 1993 and that she spent two years in prison.

According to the defendant's presentence report, the defendant is separated from her husband and has three sons. In the report, she stated that she used cocaine once a week and smoked marijuana about twice per month. She also stated that she used pain killers and was addicted to Dilaudid. The report shows that in 1992, the defendant worked for Broke "N" Jeans in Alabama, KOA in Florida, and Germantown Medical Center in Tennessee. The defendant stated that she had not been regularly employed since 1992 and currently earned money by babysitting and cleaning houses. The report shows that the defendant has two prior felony convictions for burglary, one prior felony conviction for theft of property valued more than one thousand dollars but less than ten thousand dollars, and one prior felony conviction for bail jumping. In addition, it shows that she has been convicted of at least fifteen misdemeanors, including three convictions for theft of property valued less than five hundred dollars, six convictions for DUI, two convictions for driving on a revoked license, two convictions for public intoxication, and one conviction for reckless driving. According to the report, the community corrections sentence the defendant received for her 1992 bail jumping conviction was revoked in February 1993, and she "has not done well on previous release programs."

The trial court determined that the defendant's extensive criminal history and the fact that she violated a prior sentence involving release into the community supported her serving her sentences in confinement. In addition, it noted that despite years of drug abuse, the defendant had only requested treatment for her drug problem when she faced confinement for the offenses in question. Because the defendant had failed to seek treatment for her drug addiction, the trial court ruled that she was not amenable to rehabilitation. The trial court took into consideration the fact that since the defendant's arrest for the offenses in question, she had testified against a drug dealer in federal court. However, the trial court ruled that her criminal history, drug abuse, and failure to seek treatment weighed in favor of her serving her sentences in confinement.

The defendant contends that the trial court erred by denying her request for alternative sentences. She argues that her criminal history involved only nonviolent offenses and did not justify the trial court's denying her alternative sentencing. She claims the trial court should have considered the fact that the crimes in question did not cause or threaten serious bodily injury. Also, she argues that the trial court should have given more weight to the fact that she helped federal authorities prosecute a drug dealer, returned some of the stolen property to the police, and told the police where Ms. Linginfelter had pawned many of the Waters' stolen items.

When a defendant appeals the manner of service of a sentence imposed by the trial court, this court conducts a <u>de novo</u> review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). However, the presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. <u>State v. Fletcher</u>, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

When determining if incarceration is appropriate, a trial court should consider that (1) confinement is needed to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is needed to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. <u>Ashby</u>, 823 S.W.2d at 169 (citing Tenn. Code Ann. § 40-35-103(1)(A)-(C)). Additionally, a trial court should consider a defendant's potential or lack of potential for rehabilitation. Tenn. Code Ann. § 40-35-103(5).

Based upon our <u>de novo</u> review, we conclude that the trial court did not err by ordering the defendant to serve her effective five-year sentence in confinement. The defendant has two prior felony convictions for burglary and one prior felony conviction for theft. In addition, she has fifteen prior misdemeanor convictions for various offenses, including three for theft of property, and has

violated a community corrections sentence in the past. Although the defendant has been addicted to drugs for many years, she has continued to commit crimes instead of seeking treatment. We believe ample evidence exists to support the defendant's sentences of confinement.

Based upon the foregoing and the record as a whole, we affirm the judgments of conviction.

_____
JOSEPH M. TIPTON, JUDGE